IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| FAIRMOUNT PARK, INC., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 12-CV-827-WDS |
| THE TRAVELERS INDEMNITY COMPANY, | ) ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

In this action, plaintiff Fairmount Park, Inc. seeks a declaratory judgment that defendant Travelers Indemnity Company must defend and indemnify plaintiff pursuant to two insurance policies in a matter filed with the Illinois Pollution Control Board. Now before the Court is defendant's motion for summary judgment (Doc. 44), to which plaintiff has filed a response (Doc. 49) and defendant a reply (Doc. 51).

The Court finds that it has subject-matter jurisdiction in this action. Plaintiff originally filed its complaint in Illinois state court. Defendant removed it here based on diversity jurisdiction. *See* 28 U.S.C. §§ 1332(a)(1), 1446. Plaintiff and defendant are both corporations. Plaintiff was incorporated under the laws of Delaware, with its principal place of business in Illinois, while defendant was incorporated under the laws of Connecticut, with its principal place of business also in Connecticut. Thus the parties are completely diverse. *See, e.g., Market St. Assocs. Ltd. P'ship v. Frey*, 941 F.2d 588, 589 (7th Cir. 1991). The complaint before the Illinois Pollution Control Board alleges over $4.5 million in damages, and plaintiff here seeks a defense and indemnification under two insurance policies that each provide $2 million in coverage for property damages and another $2 million for per-

sonal injury. The matter in controversy in this case therefore exceeds the sum or value of $75,000. *See* § 1332(a). The requirements of diversity jurisdiction are met.

## BACKGROUND

Plaintiff Fairmount Park, Inc., owns a horse track in Collinsville, Illinois. Plaintiff is the successor in interest to Ogden Fairmount, Inc., which owned the track before plaintiff, and had contracted with Seiber Hauling and Trucking from 1981 to 1994 to dispose of the track's manure and trash.

Seiber was disposing of the manure and trash on its own property. It later sold the property to Caseyville Sport Choice, LLC. When Caseyville sought to develop the property into a subdivision, it found over 159,000 tons of horse manure, and 2,600 tons of municipal trash. It incurred over $4.5 million in clean-up costs and obtained an Environmental No Further Remediation Letter from the Illinois Environmental Protection Agency.

On August 22, 2008, Caseyville brought a complaint against Seiber and plaintiff before the Illinois Pollution Control Board, captioned *In the Matter of Caseyville Sport Choice, LLC v. Erma I. Seiber, et al.*, PCB 2008-030 ("IPCB Matter"). Caseyville alleges that plaintiff "repeatedly paid" Seiber to haul away large amounts of horse manure, mixed with municipal trash, "with the expectation that Seiber would dump the horse manure … on his own land rather than at a properly permitted waste-disposal site or facility" (Doc. 49, Ex. 3, p. 7). Caseyville believes Seiber and plaintiff violated the Illinois Environmental Protection Act, 415 ILCS 5/21(a), which prohibits the "open dumping of any waste." Plaintiff's answer to Caseyville's complaint states that Seiber was "polluting his own land … in violation of the Illinois Environmental Protection Act" (Doc. 44, Ex. 8, p. 3).

In May 2011, plaintiff discovered two general liability policies issued by defendant Travelers Indemnity Company to Ogden Corporation, the parent company of plaintiff's

predecessor, Ogden Fairmount, Inc.[1] Plaintiff sent notice to defendant of the IPCB Matter on May 18, 2011, seeking coverage. Defendant denied plaintiff's request.

In the meantime, plaintiff had been defending itself in the IPCB Matter. Discovery was conducted[2]; plaintiff filed a summary-judgment motion, which was denied; and plaintiff engaged in settlement negotiations, which were unsuccessful. When defendant's motion for summary judgment was filed here, settlement negotiations were continuing in the IPCB Matter.

## DISCUSSION

Under Federal Rule of Civil Procedure 56, the court must grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). A party asserting that a fact cannot be, or is genuinely disputed, must support the assertion by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

After the moving party has satisfied its burden, the burden shifts to the nonmoving party. The nonmoving party "'must do more than raise some metaphysical doubt as to the material facts; [it] must come forward with specific facts showing that there is some genu-

---

[1] For purposes of this motion, defendant assumes that plaintiff is the successor in interest to Ogden Fairmount, Inc., such that it can exercise the rights of an insured under defendant's policies; that the IPCB Matter is a "suit" within the meaning of the policies; and that the IPCB Matter alleges "property damage" within the meaning of the policies.
[2] It appears some discovery is still taking place.

ine issue for trial.'" *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) (quoting *Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006)). A genuine issue for trial exists "only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Argyropoulos*, 539 F.3d at 732 (quoting *Sides v. City of Champaign*, 496 F.3d 820, 826 (7th Cir. 2007)).

## ANALYSIS

At issue in this case are two provisions of the insurance policies. The first is a notice provision, which provides: "If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative" (Doc. 44, Ex. 6, p. 21; Ex. 7, p. 21). Defendant believes it is entitled to summary judgment because plaintiff breached this notice provision by not giving defendant notice of the IPCB Matter until over two and a half years after it was filed (specifically, two years and nine months, from August 2008 until May 2011).

The second provision is the policies' pollution exclusion, which denies coverage for the discharge of waste materials into the environment:

> This insurance does not apply ... to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contamination or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental (Doc. 44, Ex. 6, p. 9; Ex. 7, p. 9).

Defendant raises the question of which state's law should be applied, that of New York or Illinois, since the policies themselves do not contain a choice-of-law provision. Defendant finds substantive differences between the laws of these states, particularly involving the pollution exclusion. It concludes that a choice-of-law analysis is necessary and

4

finds that New York law should be applied. Plaintiff responds that questions of fact preclude summary judgment under either Illinois or New York law.

A federal court with jurisdiction based on diversity applies the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941). So this Court applies the choice-of-law rules of Illinois, where the first step is to isolate the issue and define the conflict, *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 898 (Ill. 2007). A decision about the choice of law is only needed, however, when a difference in the states' laws would make a difference in the outcome. *Id.*; *Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 918 (Ill. 2007).

As will be discussed in the course of this order, the Court does not find a conflict that would make a difference in the outcome of this case on the issues of notice and estoppel; accordingly, Illinois law will be applied.

Defendant points to authority suggesting that New York and Illinois laws conflict on the issue of late notice of a lawsuit. Some courts have found that in Illinois the insurer must prove it was prejudiced by the lack of (or delayed) notice, while in New York prejudice in not necessary. *See Household Int'l, Inc. v. Liberty Mut. Ins. Co.*, 749 N.E.2d 1, 8 (Ill. App. Ct. 2001); *Ill. Nat'l Ins. Co. v. Banc One Acceptance Corp.*, No. 05-CV-1260 (NAM/DRH), 2008 WL 5423262, at *9 (N.D.N.Y. Dec. 29, 2008). That does not appear to be current Illinois law, however. Prejudice is only one factor to consider in deciding whether an insured's delay in notice was reasonable. *Country Mut. Ins. Co. v. Livorsi Marine, Inc.*, 856 N.E.2d 338, 346 (Ill. 2006); *Simmon v. Iowa Mut. Cas. Co.*, 121 N.E.2d 509 (Ill. 1954). If prejudice is only a factor that may be considered in Illinois, then a showing of prejudice is not necessary. *See Northbrook Prop. & Cas. v. Applied Sys.*, 729 N.E.2d 915, 922 (Ill. App. Ct. 2000) ("The general rule in notice cases is that the insurer need not prove prejudice."). That is the law of New York. Indeed, on this issue defendant itself does not agree there is a conflict and submits authority from both states in support of its motion

5

for summary judgment. Thus the Court does not find a conflict that would make a difference in the outcome on this issue.

Another potential conflict arises concerning Illinois' estoppel doctrine.[3] In Illinois, "[t]he general rule of estoppel provides that an insurer which takes the position that a complaint potentially alleging coverage is not covered under a policy that includes a duty to defend may not simply refuse to defend the insured." *Emp'rs Ins. of Wausau v. Ehlco Liquidating Trust*, 708 N.E.2d 1122, 1134 (1999). If the insurer has a duty to defend a suit, then it must provide a defense to the insured under a reservation of rights or seek a declaratory judgment. *Id.* at 1135. If the insurer does not do so and is later found to have wrongfully breached its duty to defend, it will be estopped from raising policy defenses to coverage. *Id.* at 1135. Thus plaintiff here argues that defendant is estopped from raising its late-notice and other defenses because it did not provide a defense to plaintiff under a reservation of rights or seek a declaratory judgment.

In response, defendant says Illinois law does not apply to this case, New York law does, and New York does not recognize the estoppel doctrine. *See Household Int'l*, 749 N.E.2d at 9. Nonetheless, even applying Illinois law, defendant contends that plaintiff breached the notice condition in the policies, which means defendant's duty to defend was never triggered. For the following reasons, the Court agrees. And, since estoppel does not apply, the Court does not find a conflict that would make a difference in the outcome.

As suggested by the cases above, estoppel only applies when an insurer has breached its duty to defend. Thus, a court must inquire whether the insurer had a duty to

---

[3] Plaintiff adds a suggestion that defendant would also be estopped from asserting coverage defenses under New York law because defendant's denial of coverage was untimely, made nine months after it received notice of the IPCB Matter. Plaintiff cites *First Financial Insurance Co. v. Jetco Contracting Corp.*, in which the Court of Appeals of New York held that the insurer's 48-day delay in giving the insured notice of denial of coverage was unreasonable as a matter of law. 801 N.E.2d 835, 840 (N.Y. 2003). That case, however, was addressing the insurer's delay under New York Insurance Law § 3420(d), which by its express terms only applies to accidents occurring within the state of New York. See § 3420(d); *In re Transp. Ins. Co. v. Cafaro*, 744 N.Y.S.2d 700, 701 (N.Y. App. Div. 2002). The property damage here occurred in Illinois, so that law and plaintiff's estoppel argument do not apply here. Defendant gives other reasons as well why that law does not apply to this case.

6

defend and whether it breached that duty. *Clemmons v. Travelers Ins. Co.*, 430 N.E.2d 1104 (1981); *Emp'rs Ins. of Wausau*, 708 N.E.2d at 1135; *United Nat'l Ins. Co. v. 200 N. Dearborn P'ship*, 979 N.E.2d 920, 925 (Ill. App. Ct. 2012). Estoppel does not apply if the insurer had no duty to defend or if the duty was not triggered, such as when the insurer was given no opportunity to defend, no insurance policy existed, or there clearly was no coverage (or potential for coverage). *Emp'rs Ins. of Wausau*, 708 N.E.2d at 1135; *La Rotunda v. Royal Globe Ins. Co.*, 408 N.E.2d 928 (1980); *United Nat'l Ins. Co. v. 200 N. Dearborn P'ship*, 979 N.E.2d 920, 925–26 (Ill. App. Ct. 2012); *Gould & Ratner v. Vigilant Ins. Co.*, 782 N.E.2d 749, 758 (Ill. App. Ct. 2002); *Pope ex rel Pope v. Econ. Fire & Cas. Co.*, 779 N.E.2d 461 (Ill. App. Ct. 2002).

To determine whether an insurer had a duty to defend the insured, the court looks at the allegations in the underlying complaint. If they are within, or potentially within, the policy coverage, the insurer has a duty to defend, even if the allegations are groundless, false, or fraudulent. *U.S. Fidelity & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (Ill. 1991).

But the insurance contract may impose duties on the insured as well. *Northbrook Prop. & Cas. Ins. Co. v. Applied Sys., Inc.*, 729 N.E.2d 915, 920 (2000). When the contract includes a provision requiring the insured to notify the insurer of a suit against it, this provision is not just a technical requirement but a "condition precedent to the triggering of the insurer's contractual duties." *Id.* at 920–21. The purpose of notice provisions is to ensure that the insurer will be able to timely investigate and defend claims against the insured. *Zurich Ins. Co. v. Walsh Constr. Co. of Ill. Inc.*, 816 N.E.2d 801, 805 (2004). Therefore, when the insured fails to comply with a notice provision, the insurer may be relieved of its duty to defend and indemnify the insured under the policy. *Id.* at 921; *N. Ins. Co. of N.Y. v. City of Chi.*, 759 N.E.2d 144, 149 (Ill. App. Ct. 2001); *INA Ins. Co. of Ill. v. City of Chi.*, 379 N.E.2d 34, 38 (Ill. App. Ct. 1978).

Despite its lengthy delay in notifying defendant, plaintiff contends that under both Illinois and New York law questions of fact preclude summary judgment. In Illinois, the timeliness of notice is generally a question of fact. *W. Am. Ins. Co. v. Yorkville Nat'l Bank*, 939 N.E.2d 288, 293 (Ill. 2010).[4] It may be resolved as a matter of law, however, when the material facts are not in dispute. *Northbrook*, 729 N.E.2d at 921; *see also IMC Global v. Cont'l Ins. Co.*, 883 N.E.2d 68, 79 (Ill. App. Ct. 2007) (observing that time periods similar to 6- and 13-month delays have been found unreasonable as a matter of law).

To be sure, the passage of time alone is not sufficient reason to deny coverage. *Northbrook*, 729 N.E.2d at 921. The court may consider several factors in determining whether notice to the insurer was given within a reasonable time: (1) the specific language of the policy's notice provision; (2) the insured's sophistication in commerce and insurance matters; (3) the insured's awareness of an event that may trigger insurance coverage; (4) the insured's diligence in ascertaining whether policy coverage is available; and (5) prejudice to the insurer. *W. Am. Ins. Co.*, 939 N.E.2d at 293–94; *MHM Servs., Inc. v. Assurance Co. of Am.*, 975 N.E.2d 1139, 1153–54 (Ill. App. Ct. 2012).

As to the first factor, the language of the policies' notice provision here is unhelpful. It required plaintiff to "immediately" forward notice to defendant. "Immediate" in notice provisions of insurance policies in Illinois is interpreted in a similar manner to "as soon as practicable," *W. Am. Ins. Co.*, 939 N.E.2d at 294, which itself is interpreted to mean "within a reasonable time, taking into consideration all the facts and circumstances," *Zurich Ins.*, 816 N.E.2d at 806. So immediate notice just means *within a reasonable time*, which is exactly what the five factors above are intended to evaluate. *See W. Am. Ins. Co.*, 939 N.E.2d at 294 (finding similar language did not help in reasonableness analysis be-

---

[4] Plaintiff notes that it is also a question of fact whether notice was adequate. *See Ill. Founders Ins. Co. v. Barnett*, 710 N.E.2d 28, 35 (Ill. App. Ct. 1999) ("Compliance with the actual notice standard is a question of fact to be determined by the totality of the circumstances."). However, there is no dispute whether the notice defendant received was adequate. The *Barnett* case plaintiff cites is discussing what actions by the insured may constitute notice in lieu of forwarding the complaint and service of summons to the insurer. *Barnett*, 710 N.E.2d at 34–35. Defendant here argues that the notice it received was late, not that it did not receive notice.

cause it did not identify a specific time frame for giving notice).

Regarding plaintiff's sophistication in commerce and insurance matters, plaintiff says it is a race-track operator that did not purchase the insurance policies itself; it is not a bank where sophistication in commerce and insurance matters can be presumed. *See W. Am. Ins. Co.*, 939 N.E.2d at 294. It is true that courts will sometimes consider the specific experience of the insured in handling insurance claims. *See Berglind v. Paintball Bus. Ass'n*, 930 N.E.2d 1036, 1045 (Ill. App. Ct. 2010) (noting that the insured had never owned real estate and was a high-school dropout); *MHM Servs.*, 975 N.E.2d at 1159 (finding insured was sophisticated where it had both primary and excess/umbrella coverage, general counsel, local litigation counsel, coverage counsel, and had enough cash to pay litigation and settlement expenses). The Court does not find plaintiff's point persuasive. Plaintiff is not an uneducated individual. It is a corporation, it had a parent corporation in New York, and it previously went through a merger. It had an attorney representing it in the IPCB Matter by September 2008, only one month after the claim was brought against it, and long before it gave defendant notice of the suit in May 2011 (Doc. 44, Ex. 11). This factor weighs against plaintiff.

Further, plaintiff was easily aware that the IPCB Matter was an event that might trigger insurance coverage. It discovered the general liability policies in May 2011 and sent notice of the IPCB Matter to defendant the same month. This factor weighs strongly against a finding that notice was given within a reasonable time.

As to the insured's diligence in ascertaining whether coverage is available, "a lengthy delay in providing notice is not an absolute bar to coverage provided the insured's reason for the delay is justifiable under the circumstances." *W. Am. Ins. Co.*, 939 N.E.2d at 294. The Court finds little if any diligence. Plaintiff does not explain what it was doing for two years and nine months. Its only excuse is ignorance of the existence of the insurance policies. But ignorance may offer an excuse only when the insured is without negligence or

9

fault. *Int'l Harvester Co. v. Cont. Cas. Co.*, 179 N.E.2d 833, 835 (Ill. 1962). Even then, ignorance is "only one of the circumstances to be considered when determining whether or not due diligence was exercised in the giving of notice 'as soon as practicable.'" *Id.* at 835. Plaintiff argues that it did not take out the policies itself, so it should be given some leniency in deciding whether its notice was timely, as in *Scott v. Inter-Ins. Exchange of Chi. Motor Club*, 267 Ill. App. 105, 109 (Ill. App. Ct. 1932). The insured in *Scott*, however, was an individual driving someone else's vehicle, and it turned out that he was covered under that other person's insurance policy. The insurer was already involved in the lawsuit and knew the individual was covered, but did not inform him. *Scott*, 267 Ill. App. at 109. That is not comparable to the situation here. Plaintiff claims to be Ogden Fairmount's successor in interest, and therefore a subsidiary of Ogden Corporation. Plaintiff cannot claim to hold the same rights and interests as Ogden Fairmount under Ogden Corporation's contracts while also being *justifiably* ignorant of the existence of those contracts. Moreover, the existence of the policies was recorded on a spreadsheet that was in plaintiff's possession. Yet plaintiff offers no explanation of what it was doing during the two years and nine months before discovering the spreadsheet. *See N. Ins. Co. of N.Y.*, 759 N.E.2d at 150 ("[I]t is implausible to believe that the City could not discover Northern was its insurer sometime before 2 1/2 years had passed."). Plaintiff did not exercise diligence in ascertaining whether coverage was available.

      Finally, defendant argues that it was prejudiced by not being able to participate in the IPCB Matter for over two and a half years. By then, plaintiff had participated in at least some discovery, filed a motion for summary judgment, and engaged in unsuccessful settlement negotiations without defendant's participation. "Compliance with a notice clause enables the insurer to conduct a timely and thorough investigation into the insured's claim, assess whether settlement or litigation is the best course of action, and participate in the insured's defense." *MHM Servs.*, 975 N.E.2d at 1152–53. Defendant might have prevailed

on a dispositive motion or reached a settlement by now had it been involved. The Court finds that defendant has been prejudiced by the late notice.

Accordingly, the Court finds that plaintiff's notice to defendant was not given within a reasonable time. Indeed, notice was so late, and unjustifiably late, that there clearly was no coverage or potential for coverage. Consequently, defendant had no duty to defend plaintiff in the IPCB Matter, and Illinois' estoppel doctrine does not apply. *See Am. Nat'l Fire Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 796 N.E.2d 1133, 1143 (Ill. App. Ct. 2003) (no opportunity to defend when insured was given first notice of the lawsuit three years after it was filed, and lawsuit settled less than one month after insured received notice of it); *N. Ins. Co. of N.Y.*, 759 N.E.2d at 152 (finding it clear that the underlying complaint was outside any potential for coverage because almost two and half years had passed before the insured notified the insurer of the lawsuit); *see also Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069, 1074 (7th Cir. 2004) (calling delays of 13 and 17 months "extreme"); *Northbrook Prop.*, 729 N.E.2d at 920 (finding no duty to defend where 17 months passed before insured notified insurer of lawsuit); *Gen. Cas. Co. of Ill. v. Juhl*, 669 N.E.2d 1211, 1214 (Ill. App. Ct. 1996) (finding delay of seven and a half months unreasonable as a matter of law).

In addition, where an insurer owes no duty to defend, it owes no duty to indemnify, because the duty to defend is broader than the duty to indemnify. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1081 (Ill. 1993); *Metzger v. Country Mut. Ins. Co.*, 986 N.E.2d 756, 765 (Ill. App. Ct. 2013). Therefore, defendant will not owe a duty to indemnify plaintiff should plaintiff be found liable in the IPCB Matter.

Although this order only reaches the issues of notice and estoppel, the parties discuss many other issues in their briefs, including whether the damages alleged in the IPCB Matter should be considered a personal injury rather than property damage, whether manure is a "waste material" within the meaning of the policies' pollution exclusion, whether

the pollution exclusion only applies to actions taken by the insured itself (as opposed to third parties), and the meaning of the term "sudden" in the pollution exclusion. Those issues would require a much longer analysis, including a choice-of-law analysis, which the Court does not believe would result in a different outcome. *See Barron v. Ford Motor Co. of Can. Ltd.*, 965 F.2d 195, 197 (7th Cir. 1992) ("It is not easy to see what difference this would have made to the outcome of the case; and before entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states.")

## CONCLUSION

The Court **FINDS** that defendant is entitled to judgment as a matter of law. Its motion for summary judgment (Doc. 44) is, accordingly, **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment in favor of defendant Travelers Indemnity Company and against plaintiff Fairmount Park, Inc. Each party shall bear its own costs.

**IT IS SO ORDERED.**

DATED: <u>September 30, 2013</u>

                                                       **/s/ WILLIAM D. STIEHL**
                                                        **DISTRICT JUDGE**